UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 18-cr-00251 |
| VERSUS | CHIEF JUDGE HICKS |
| ROBERT C POIMBOEUF (01)<br>DONNA G POIMBOEUF (02) | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

**Introduction**

Robert and Donna Poimboeuf (collectively "Defendants") were indicted by a federal grand jury and charged with filing a false tax return. Doc. 1. The grand jury later returned a superseding indictment charging Defendants with one count of conspiracy to defraud the United States and four counts of making false statements on income tax returns. Doc. 29. Before the court are several discovery motions filed by the parties. The motions are granted in part and denied in part as explained below.

**Motion for Production of Documents (Doc. 45)**

Defendants[1] ask that the Government be compelled to produce all documents relating to (1) AdvanceMed's audit of D&G, (2) the investigation conducted by Christopher Knighton, and (3) the grand jury investigation. Defendants argue that the AdvanceMed audit will indicate that Defendants could not reliably determine D&G's income and receipt information using 1099 forms submitted to D&G by third parties. They

---

[1] Robert Poimbeouf originally filed these discovery motions, and Donna Poimboeuf filed a motion to adopt them. Doc. 50. That request was granted. Doc. 52.

claim that the prior investigation may have gathered information about the correctness of the third-party gross receipt information. If the information gathered during the audit differs from the information provided to Defendants by third-party payers, this information would be material to whether Defendants *knowingly* submitted false tax returns.

In its response (Doc. 55), the Government states that, to determine the accuracy of the amount of gross receipts and income Defendants received from third-party payers, the Government looked at the bank statements of D&G holdings. All of the bank statements have been turned over to Defendants in discovery, and Defendants have access to the information in their records. Furthermore, the Government states that it is not relying on any of the allegations of misconduct documented in the prior investigation.

The court agrees with the Government. Defendants are not charged with improper billing practices. The gravamen of the pending charges are that Defendants knowingly and willfully understated the gross receipts of their business, D&G. The court will not require the Government to produce its investigative file on charges that were not indicted. The court fully expects that the Government will comply with discovery obligations and produce any Brady materials in its possession that pertain to this case.

Defendants also argue that information concerning the timeline and reasons for the post-payment audit and resulting grand jury investigation is material to the impeachment of government investigators. Defendants contend that the prosecutor was "determined to find any charges that could justify the time and resources they had spent investigating now nonviable Medicare charges." Doc. 45, p. 5. They assert that this conclusion is supported

by the fact that the IRS Special agent leading the investigation was married to an investigator in the U.S. Attorney's Office.

This argument borders on the absurd. The grand jury investigation into tax charges began over a year *before* the Medicare Appeals Council's decision, so the Appeals Council's decision could not be the cause of the investigation into new charges. Furthermore, it is well settled that the reasons a defendant is charged with a crime are irrelevant so long as the prosecutor has probable cause to believe that the accused has committed an offense. United States v. Armstrong, 517 US 456,464 (1996). The information sought is not a proper subject of discovery on the showing made. Accordingly, this request is also denied.

**Motion for Impeaching Information (Doc. 46)**

Defendants seek entry of an order for the Government to make an inquiry with respect to any Government witness and disclose several categories of documents, such as rap sheets, prior bad acts, consideration or promises given to witnesses, personnel files, and other information. Doc. 46.

In this division, the Government routinely exceeds its discovery obligations, not just under Rule 16, but also under Brady, Giglio, and the Jencks Act. Indeed, as reflected in the Government's response, it has already invited defense counsel to its office to view Jencks material. But much of the information itemized in Defendants' motion goes beyond any obligation of the Government. For example, the Government has no obligation to obtain personnel files of non-government employees or to use NCIC to vet every potential

witness. However, the court expects that the Government will produce any relevant criminal history information that it has in its possession.

**Motion for Disclosure and Inspection of Personnel Files (Doc. 47)**

Defendants request the personnel files of HHS-OIG Special Agent Steven Cooper, IRS-CI Special Agents Jamie Knighton, Jude Armand, and Darrin Heusel, Investigator Christopher Knighton, and other agents who worked on the case or will be called to testify. Doc. 47. Defendants do not give a reason for the request or state how the personnel files may be material to their defense. They do assert that, pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), the Government must examine personnel files of testifying officers upon a defendant's request for their production.

This motion is denied. The Government is under no obligation to produce this material to the defense unless particular information contained in those files, which is known to the Government, falls under Brady, Giglio, or other production obligation of the Government. Defendants' rank speculation that the personnel files might contain information useful for impeachment is not enough. See United States v. Quinn, 123 F.3d 1415, 1421-1422 (11th Cir. 1997); United States v. Driscoll, 970 F.2d 1472, 1482 (6th Cir. 1992).

**Motion for Preservation of Jencks Material (Doc. 48)**

Defendants also seek an order from the court that the Government preserve all prospective Jencks material, including notes taken by Government employees. Doc. 48. The Government responds that, although it has not produced prospective Jencks material at this time, it has no obligation to do so; however, it has invited counsel for Defendants to

review prospective Jencks material at the U.S. Attorney's Office. The Government asserts that it understands the importance of preserving possible Jencks material and will meet its obligation to produce information that can be used to impeach government witnesses. Accordingly, this motion is denied as premature.

**Donna Poimboeuf's Motion for Production of Documents (Doc. 51)**

Donna Poimboeuf filed another Motion for Production of Documents seeking documents she did not receive in response to a Freedom of Information Act ("FOIA") request. The Government responds that the FOIA request was made during the ongoing investigation but, since that time, the Government has brought charges against Defendants and has provided discovery. The Government agrees to produce documents within its possession that are material to preparing the defense. Accordingly, this motion is denied as moot.

**Government's Motion to Quash or Vacate Subpoena Duces Tecum (Doc. 53)**

Defendant Donna Poimboeuf issued Rule 17 subpoenas to the Caddo Parish Sheriff's Office, Citizens National Bank, and the Texas accounting company Knuckols, Duvall, Hallum and Company. The Government filed a motion to quash only the subpoena for the Caddo Parish Sheriff's Office. The subpoena is addressed to Doug Smith of the Financial Crimes Tasks Force and orders production of "[a]ll records regarding Rita Cooks (a/k/a Sherita Cooks) including but not limited to records of criminal convictions investiagion [sic] records, arrest records and booking and processing records."

The Government argues that Defendant is impermissibly using the subpoena as an alternate means of pretrial discovery, thereby improperly seeking information that she

could not obtain under Rule 16. Citing <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214 (1951), the Government argues that pretrial subpoenas are not meant to provide a defendant with access to materials otherwise unavailable to her by law.

The Government also argues that the subpoenaed information does not meet the relevancy, admissibility, and specificity requirements set forth in <u>United States v. Nixon</u>, 418 U.S. 683 (1974). It argues that Defendant made the request without verification that the requested documents exist or are in possession of the Sheriff's Office and that the broad request for "all records" fails to specify with particularity the documents and materials sought.

Finally, the Government argues that the method of production, delivery to the Shepard Law Firm, is improper, and that Rule 17(c) requires the subpoenaed items to be produced before the court.

As relief, the Government requests that the court (1) quash the subpoena served on the Caddo Parish Sheriff's Office, (2) order that any additional subpoenas be provided to the court for inspection, (3) order Defendant to consult the court before issuing additional subpoenas, and (4) order that any responsive documents be produced to the court.

Defendant argues that Rule 16 governs discovery from the Government, while Rule 17 governs discovery from non-parties. Therefore, since the Caddo Parish Sheriff's Office is not a party, the subpoenas do not impermissibly expand Rule 16 discovery.

As to the Government's <u>Nixon</u> argument, Defendant responds that the Supreme Court did not hold that the <u>Nixon</u> standard applies to subpoenas issued to nonparties; instead, under Rule 17, the subpoena can only be quashed "if compliance would be

unreasonable or oppressive." Alternatively, Defendant argues that the subpoena meets the Nixon standard. She argues that the items sought are evidentiary in nature because Ms. Cooks' prior felony convictions are admissible pursuant to FRE 609. She also argues that the kind of documents sought are identified with reasonable particularity, and they are relevant to her defense.

As to the Government's argument that Rule 17 requires the documents to be produced to the court, Defendant argues that the rule makes this procedure optional. Defendant also cites this court's Standing Order 1.15, which states that subpoenas and returns on subpoenas shall not be filed into the record. Defendant argues this rule is inconsistent with the Government's assertion that subpoenaed documents must be produced to the court.

The Government's motion to quash is denied, but the court will exercise its discretion to narrow the scope of the subpoena. As noted by the Government, Defendant's blanket request for "all records" pertaining to Ms. Cooks is too broad. The court hereby modifies the subpoena to limit the request to "records pertaining to the arrest and/or conviction of Rita Cooks (a/k/a Sherita Cooks) in the possession of the Caddo Sheriff's Office, which does not include any data located on the cell phones of the Sheriff or his many deputies and employees." Defendant's counsel are reminded of their obligation to maintain custody of produced records in accordance with Standing Order 1.15.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of April, 2019.

Mark L. Hornsby
U.S. Magistrate Judge