**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-00251-01/02 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| ROBERT C. POIMBOEUF (01)<br>DONNA G. POIMBOEUF (02) | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Superseding Indictment (Record Document 78) filed by Defendant Robert C. Poimboeuf and Defendant Donna G. Poimboeuf ("the Poimboeufs" or "the Defendants"). The Poimboeufs move the Court to dismiss the Superseding Indictment for ongoing violations of their constitutional rights guaranteed by the Fifth and Sixth Amendments. See id. More specifically, the Poimboeufs contend "dismissal of the Superseding Indictment is necessary because the United States, acting through the Secretary of Health and Human Services and the Secretary's Medicare Administrative Contractor, Novitas Solutions, Inc., unlawfully seized prior to [I]ndictment more than $4.1 million dollars from the Defendants and has refused to return the money desperately needed by the Poimboeufs to secure counsel of their choice and to permit their attorneys to prepare and present the Poimboeufs' defense to the criminal charges in the Superseding Indictment." Id. at 1-2. The Government has opposed the motion on multiple grounds. See Record Document 80. For the reasons set forth below, Defendants' Motion to Dismiss Superseding Indictment (Record Document 78) is **DENIED**.

**BACKGROUND**

The Poimboeufs have been charged in a Superseding Indictment with one count of conspiracy to defraud the United States and five counts of making false statements on income tax returns. See Record Document 29. The Superseding Indictment alleges that as part of the manner and means used to accomplish the object of the conspiracy, the Poimboeufs "withheld financial information from Accounting Firms A and B so that revenue earned by D&G [Holdings, LLC] would not be reported on their tax returns. The information withheld included bank account information and Forms 1099 issued to D&G by its customers." Id. at 3.[1]

The Defendants refer extensively in the instant motion to an opinion issued on July 2, 2019 by the United States Court of Appeals for the Fifth Circuit. See D&G Holdings, L.L.C. v. Azar, 776 Fed.App'x 845 (5th Cir. 2019). Key portions of the Fifth Circuit's opinion are set forth below:

> The parties have asked us to decide a ***jurisdictional question*** regarding a claim for repayment of Medicare benefits wrongly recouped by a Medicare Administrative Contractor ("MAC").
>
> . . .
>
> D&G Holdings, LLC, is a Medicare supplier that provides lab services to nursing homes and other homebound people in Louisiana. In 2011, a Medicare Zone Program Integrity Contractor ("ZPIC") audited D&G's Medicare claims. Three years later, the ZPIC concluded that D&G had overbilled the Medicare program and had consequently received $8.3 million in excess Medicare reimbursements. Novitas Solutions, Inc., the MAC for Louisiana, relied on the ZPIC's finding and instructed D&G to refund the full amount. D&G challenged Novitas's overpayment determination through the harrowing labyrinth of Medicare appeals.

---

[1] D&G Holdings, LLC is a Louisiana limited liability company that does business as Doctors Lab. See Record Document 29 at 1. The Poimboeufs own, operate, and control D&G. See id.

> . . .
>
> For over three years, D&G slogged through this administrative morass. It emerged victorious: [In 2017,] [t]he Council overturned the overpayment determination. When an overpayment determination is overturned, the money recouped from a Medicare provider during the administrative-appeals process must be returned. 42 U.S.C. § 1395ddd(f)(2)(B). D&G has waited for this repayment. It has never come.
>
> So D&G resorted to the federal courts. It sued the Secretary of the Department of Health and Human Services ("Secretary"), invoking the district court's jurisdiction under § 405(g). D&G alleged that the Secretary must return the recouped money under § 1395ddd(f)(2)(B). D&G further alleged that the total amount recouped—and the amount it was therefore owed under § 1395ddd(f)(2)(B)—was $4.1 million, plus interest. On the same day D&G filed its complaint, Novitas without explanation made a single $1.8 million payment to D&G.
>
> The district court dismissed D&G's complaint for lack of subject matter jurisdiction under § 405(g). This appeal followed. D&G asks us to find jurisdiction under § 405(g) or, in the alternative, allow it to add a mandamus claim to its complaint.

Id. at *1-2 (emphasis added). The Fifth Circuit ultimately vacated the district court's judgment and remanded the case for reconsideration of the jurisdictional issue in light of In re Benjamin, 924 F.3d 180 (5th Cir. 2019). See id. The Fifth Circuit did not "address the correctness of the district court's July 27, 2018 opinion," except for one aspect. Id. The Fifth Circuit stated that the district court's characterization of Novitas's decision to issue D&G a check for $1.8 million as an initial determination under Medicare Act was wrong. See id. Later, the Fifth Circuit granted the United States' motion for an extension of time to file a petition for rehearing until October 16, 2019. See Record Document 33 in D&G Holdings, LLC v. Alex M. Azar, II, Secretary of the U.S. Dep't of Health and Human Servs., Civil Action No. 17-1045 (Western District of Louisiana). To date, the civil matter remains at the Fifth Circuit.

Relying upon the facts set forth above in relation to D&G's claim for repayment of Medicare benefits wrongly recouped by a MAC, the Defendants argue the United States Attorney's Office for the Western District of Louisiana "chose to seek the Indictment and Superseding Indictment in this case while knowing that the government was also engaged in the pre-trial restraint of the Poimboeufs' innocent money (*e.g.*, the approximately $3 million dollars of untainted funds that must be returned to them)." Record Document 78 at 5. The Defendants contend "the government cannot, consistent with the Fifth and Sixth Amendments . . ., restrain 'innocent' money needed for the Poimboeufs' defense and simultaneously pursue criminal charges against them." Id. at 5-6.

## LAW AND ANALYSIS

**I.  Legal Standards.**

Whether grounded in due process or the right to counsel protections of the Sixth Amendment, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146 (1986) (internal citations and quotations omitted). The Sixth Amendment guarantees that a criminal defendant has "the right to be represented by an otherwise qualified attorney whom he can afford to hire." Caplin & Drysdale, Chartered v. U.S., 491 U.S. 617, 624-625, 109 S.Ct. 2646, 2652 (1989); see also Luis v. U.S., 136 S.Ct. 1083 (2016).

In Luis, the Supreme Court addressed "[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments." Luis, 136 S.Ct. at 1088. The statute at issue was Title 18, United States Code, Section 1345, which

"provides that a court may freeze before trial certain assets belonging to a criminal defendant accused of violations of federal health care or banking laws." Id. at 1087. Under the statute, such assets "include: (1) property 'obtained as a result of' the crime, (2) property 'traceable' to the crime, and (3) other 'property of equivalent value.'" Id., citing § 1345(a)(2). In Luis, the Government obtained a court order to freeze assets falling into the third category of property, that is, property untainted by the crime and belonging fully to the defendant. See id.[2] Luis argued that the order prevented her from paying her lawyer and, thus, violated her Sixth Amendment "right ... to have the Assistance of Counsel for [her] defense." Id. The Supreme Court ultimately agreed, holding "the defendant in this case has a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel." Id. at 1096.

The Luis court noted that a key fact in the case was that the property was "untainted; i.e., it belong[ed] to the defendant, pure and simple." Id. at 1090. The Court compared this to instances where "the defendant's ownership interest [was] imperfect," such as "a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime." Id. The Court further reasoned that the Government's restriction upon Luis' untainted property without any showing of any equivalent governmental interest in that property was unconstitutional. See id. at 1092. In concluding that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violated the Sixth Amendment, the

---

[2] In Luis, the district court issued an order prohibiting Luis from "dissipating, or otherwise disposing of . . . assets, real or personal . . . up to the equivalent value of the proceeds of the Federal health care fraud ($45 million)." Luis, 136 S.Ct. at 1088.

Court balanced "the nature and importance of the constitutional right taken together with the nature of the assets" at issue. Id. at 1088.

**II.    Analysis.**

The Government has opposed the defense Motion to Dismiss the Superseding Indictment, arguing (1) there has been no determination regarding how much additional money, if any, the Department of Health and Human Services ("HHS") owes D&G, thus the Defendants cannot establish an ownership interest in the allegedly "seized" assets for the purposes of their Sixth Amendment claim; (2) even if the balance of the $4.1 million in Medicare funds at issue is a quantifiable asset owned by the Poimboeufs, the Government's conduct is not an impermissible "restraint" of that asset for purposes of the Sixth Amendment; and (3) the Defendants have not demonstrated they are unable to pay for their defense counsel of choice, that is, they have not satisfied the "need" requirement. Record Document 80.

<u>The Defendants' Ownership Interest</u>

As noted previously, a key factor in the Supreme Court's analysis in <u>Luis</u> was that the property was "untainted; <u>i.e.</u>, it belong[ed] to the defendant, pure and simple." <u>Luis</u>, 136 S.Ct. at 1090. The same can be said here. There is no dispute that HHS paid D&G approximately $1.8 million in August 2017. It appears this amount represents HHS's determination of the amount D&G was owed. This money is available to the Poimboeufs for use to fund their defense. However, there has been no final adjudication by a court or a determination by an administrative body of the additional amount owed, if any, by HHS to D&G. The July 2019 Fifth Circuit opinion addressed a jurisdictional question, not what additional amount, if any, is due D&G. There has been no determination that "HHS

owes D&G an additional sum certain" or that the contested funds belong fully to the Defendants. Record Document 80 at 4. Thus, it cannot be said that the funds at issue belong to the Poimboeufs "pure and simple" or that their ownership interest in such funds is "perfect." Luis, 136 S.Ct. at 1090. At best, the Poimboeufs have a tenuous ownership claim in the restrained Medicare funds.

Moreover, in order for the Defendants' constitutional violation claims to succeed, this Court would be required to (1) insert itself in a separate civil proceeding wherein D&G is making a claim for repayment of Medicare benefits; and (2) make the legal determination that D&G is owed an additional sum certain. The civil matter is currently before the United States Court of Appeals for the Fifth Circuit, as the appellate court granted an extension of time for the Government to seek a rehearing. Thus, based on the showing made in the defense motion, this Court does not believe it has the legal authority to get involved in the substantive merits of the claim for repayment of Medicare benefits and is unwilling to insert itself in a wholly separate civil matter.

No Impermissible Restraint

The Government argues that even if the balance of the $4.1 million in Medicare funds at issue is a quantifiable asset owned by the Poimboeufs, the Government's conduct is not an impermissible "restraint" of that asset for purposes of the Sixth Amendment. Here, the Defendants assert that United States, "through its continued defense of HHS in the ongoing civil lawsuit, has impermissibly restrained their assets." Record Document 80 at 11. While Defendants argue to the contrary, this Court does not believe that the mere defense of HHS in an ongoing civil matter regarding repayment of Medicare benefits – one that is disconnected from the instant criminal prosecution – is an

improper Government restraint on assets for purposes of the Sixth Amendment. The Defendants contend that no "direct connection" between their criminal case and their civil case is required to implicate their Sixth Amendment rights. See Record Document 81 at 4-11. Yet, many of the cases cited by the Defendants invoked 18 U.S.C. § 1345 as the civil statute providing the legal authority for the Government to restrain the funds of a criminal defendant pretrial. See id. Section 1345 allows a court to freeze before trial certain assets belonging to a criminal defendant accused of violations of federal health care or banking laws. The alleged restraint in this case was not done pursuant to Section 1345 and any other civil forfeiture statute in relation to the pending criminal matter. In fact, the alleged restraint is wholly unrelated to the criminal prosecution for conspiracy and making false statements on income tax returns. Under the circumstances of this case, this Court finds no improper interference with the Defendants' Sixth Amendment right to counsel.

## Need

Finally, the Government argues that the Defendants have not demonstrated they are unable to pay for their defense and, thus, they have failed to meet the "need" requirement. The Government maintains that the Poimboeufs have not made a threshold showing that HHS's restraint of funds has left them unable to afford their counsel of choice. The Government points to a line of post-Luis circuit court decisions recognizing the need-based requirement. See U.S. v. Lindell, 766 Fed.App'x 525, 528 (9th Cir. 2019); U.S. v. Marshall, 754 Fed.App'x 157, 160 (4th Cir. 2018) ("Because Marshall was represented by the counsel of his choice, there was no need for the seized funds and, thus, no Luis error."). In Lindell, the court stated:

> However, after Luis was issued (and a year after their conviction), Defendants for the first time asserted they had actually needed those funds to hire private counsel to represent them at trial and for post-trial proceedings. The timing of this request suggests that Defendants never intended to hire counsel with any allegedly untainted IRA funds, but instead merely saw a promising argument for vacating their convictions after Luis was handed down. Nothing in the record necessitates a contrary conclusion. In these circumstances, it is not clear or obvious that the IRA funds were actually needed to pay for counsel at any time.

Lindell, 766 Fed.App'x at 528-529.

Conversely, the Defendants point to a circuit court decision holding that the Government could not restrain pretrial the defendant's innocent assets regardless of whether the defendant needed the assets or not. See U.S. v. Chamberlain, 868 F.3d 290 (4th Cir. 2017) (en banc); see also U.S. v. Miller, 295 F.Supp.3d 690, 707 n. 8 (E.D. Va. 2018) ("Because Chamberlain specified that the government is not permitted to seize substitute assets prior to trial, regardless of whether those assets are needed to retain and pay for counsel and a defense, defendant here is not required to prove that he needs the seized assets to pay for counsel to be entitled to a release of funds."). The Defendants have also submitted the sworn declarations of their lead counsel regarding the Defendants' need for the funds. See Record Document 78-1 at 83-91; Record Document 81 at 16.

In Luis, the Supreme Court addressed "[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) ***needed to retain counsel of choice*** violates the Fifth and Sixth Amendments." Luis, 136 S.Ct. at 1088 (emphasis added). This need requirement has been interpreted differently by the circuits and there is no controlling, post-Luis precedent from the Fifth Circuit. While this Court believes that there has been no violation of the Sixth Amendment

because the Poimboeufs have retained their counsel of choice, it need not make a final determination as to the need requirement because the Poimboeufs have failed to show a "perfect" ownership interest in the funds and/or that the Government's actions in this instance are an impermissible restraint.

## CONCLUSION

Based on the foregoing analysis, the Court finds that the Defendants' Motion to Dismiss Superseding Indictment fails because the Poimboeufs have not shown their ownership interest in the challenged funds is perfect and that the Government's actions in this instance amount to an impermissible restraint for purposes of the Sixth Amendment.

Accordingly,

**IT IS ORDERED** that the Defendants' Motion to Dismiss Superseding Indictment (Record Document 78) be and is hereby **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of October, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT